Jane D. **HUBERMAN**, Plaintiff,

v.

**DENNY'S RESTAURANTS, INC.**, a corporation, et al., Defendants.

No. C–71–1507.

United States District Court,
N. D. California.

Jan. 17, 1972.

Farella, Braun & Martel, San Francisco, Cal., for plaintiff.

Denny's Restaurants, Inc. and Harold Butler Enterprises #431, Gibson, Dunn & Crutcher, John L. Endicott, Los Angeles, Cal., for defendants.

Sandra J. Shapiro, Bancroft, Avery & McAlister, San Francisco, Cal., for defendant Kenco Development Co.

## ORDER DENYING MOTION TO DISMISS

OLIVER J. CARTER, Chief Judge.

This suit is brought in federal court under SEC Rule 10b–5 and the Securities and Exchange Act of 1934, 15 U.S. C. §§ 78a–78hh. There are several pendant state claims attached. The motion before this Court is to dismiss the action because no "security", as defined by the Act, is involved. If no "security" exists the Court lacks jurisdiction of the subject matter. However, this Court believes that the transaction complained of is a "security" as that term has been defined by the Supreme Court.

Defendant Kenco, a development corporation, entered into a lease agreement with defendant Butler corporation, a subsidiary of Denny's Restaurants. In this Lease Kenco agreed to construct a Sam's Roast Beef Restaurant on certain premises, which restaurant would be leased to Butler for twenty years. In the lease Butler agreed to pay a minimum monthly rental plus an additional amount equal to five per cent of the gross sales per month. This property with the lease was sold by Kenco to the plaintiff. Plaintiff alleges that when defendants were soliciting her purchase of this restaurant and lease false representations concerning the expected returns from the venture were made via the United States mails, or the telephone. The issue raised by the motion to dismiss is whether this transaction is the purchase and sale of a "security".

Defendants claim that this transaction is merely the sale of commercial property which property has been leased under a common commercial lease. They correctly point out that many people buy property with the expectancy of making a profit, yet such transactions are not securities. However, here plaintiff has alleged that she bought property and a lease which guaranteed her a return on her investment. The amount she could realize was also dependent upon the expertise of Denny's in running the franchise. There is no hint from these facts that plaintiff ever intended to use her own efforts to run the restaurant and make profits therefrom. Instead plaintiff alleges that she bought a "security" when she invested in this restaurant property.

There are two leading Supreme Court decisions which interpret the meaning of the word "security" within this Act, S. E. C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943) and S. E. C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Those decisions dealt with investment contract securities, 15 U.S.C.A. § 78c(a) (10), the type which plaintiff alleges is involved herein. One of the rules the Supreme Court states in *Joiner, supra,* was that remedial legislation such as the 1934 Act reaches past the obvious and commonplace to novel or irregular devices used as investment contracts.

In *Joiner* investors purchased assignments of oil leases on small parcels of land; the underlying leases containing an agreement that lessees would drill a test well somewhere on the tract. Defendant Joiner agreed to drill the well and was financing the proposed drilling by peddling small leasehold interests. The court held that the economic inducement that Joiner would drill the well, and thereby enhance the value of the leaseholds if oil were found, was an event upon which every investor had depended. This was "a form of investment contract in which the purchaser was paying both for a lease and for a development project." 320 U.S. 344, at 349, 64 S.Ct. 120, at 122.

In the *Howey* case, *supra,* investors purchased a real property interest in a citrus grove owned by one of the defendants. The investors were encouraged to enter the contract with a companion corporation to manage and control the acreage. The annual return was based on the percentage allocation to each

investor of the profits from the total sales of the grove. The court said:

" . . . an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." 328 U.S. 293 at 298–299, 66 S.Ct. 1100 at 1103.

The Court of Appeals for the Ninth Circuit has read the *Howey* case to add the test of common enterprise to the *Joiner* test of results dependent on the efforts of one other than the purchaser. Los Angeles Trust Deed & M. Exch. v. S. E. C., 285 F.2d 162 at 168 (9 Cir. 1960).

■ Defendants in oral argument claimed that there is no common enterprise here. Allegedly this was an isolated transaction which involved only one plaintiff. Whether or not that characterization is correct is immaterial because there was a common enterprise here as that term is commonly used. Both plaintiff and defendant Butler were going to benefit from the productive operation of the restaurant. Butler as lessee would profit by running a successful restaurant. Plaintiff as owner of the building and land not only had the landlord's natural interest in the well being of her tenant but the significant interest in the amount of additional "rent" from the lease that was dependent on the volume of restaurant sales. Therefore, since plaintiff and defendants had a common interest in the success of the venture, a "common enterprise" has been properly alleged for purposes of coming within the *Howey* test.

■ The other part of the Supreme Court's test is also met here. The lease package was allegedly put together and offered as an investment to plaintiff. Plaintiff alleges that she bought a pre-packaged investment contract. She was not buying a franchise restaurant to manage and defendants have not claimed that plaintiff ever showed any intention of running the franchise herself. She was looking solely to the efforts of Denny's and the other defendants for her profits: First in the guaranteed rental that they had put in their lease, and second by the successful running of the franchise which would increase her "rental" receipts with the increase of sales. This complete reliance by plaintiff on the efforts of her "lessee" for the added "rental" income distinguishes this case from two recent decisions concerning franchises or distributorships.

In Mr. Steak, Inc. v. River City Steak, Inc., 324 F.Supp. 640 (D.Colo.1970), the district court found that no "security" was involved and dismissed a 10b–5 counterclaim. The court ruled that when the owner of the franchise could fire the franchisor's chosen manager and otherwise was permitted to participate in the business operations, then the *Joiner* test of reliance strictly on the efforts of others was not met. The case before this Court is easily distinguishable because the lease gives the lessor no part in running the restaurant.

On the same grounds the case of Chapman v. Rudd Paint & Varnish Co., 409 F.2d 635 (9th Cir. 1969) can be distinguished. In *Chapman* the court ruled that no "security" was involved because it was necessary for the purchaser to play an active role in order to make a profitable distributorship. Here, the lease package which plaintiff purchased neither stated nor implied that it was intended that plaintiff participate in operating the franchise.

Accordingly, since plaintiff has alleged facts which if true could entitle her to relief under Rule 10b–5 of the Securities and Exchange Act of 1934 and sections 78a–78hh,

It is ordered that the motion to dismiss for lack of jurisdiction over the subject matter be, and the same is hereby denied.