356 So.2d 1302 (1978)
Marvin I. WIENER and Sidney M. Bodzin, As Trustees, and Phil Perry and Phil Perry, Inc., Appellants,
v.
Hazel BROWN et al., Appellees.
No. 77-527.
District Court of Appeal of Florida, Third District.
March 28, 1978.
*1303 Myers, Kaplan, Levinson, Kenin & Richards and Thomas R. Spencer, Jr., Bartel, Levine & Shuford, Miami, for appellants.
Dixon, Dixon, Lane, Mitchell & Harris, Miami, and C. Robert Murray, Jr., Coral Gables, for appellees.
Before NATHAN and KEHOE, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
CHARLES CARROLL (Ret.), Associate Judge.
Defendants below appeal from an order granting partial summary judgment in favor of the plaintiffs, and denying defendants' motion for summary judgment.[1]
The determinative question is whether the interests of the several persons who purchased a parcel of unimproved real estate which is being held for resale constituted sales to them of securities in violation of Chapter 517, Florida Statutes (1975). For the reasons set out below we hold they did not, and reverse.
In 1973 Phil Perry, Inc., a licensed real estate broker, interested 25 persons in the *1304 purchase of a certain tract of unimproved real estate from the owner thereof. Said persons purchased the property, taking title in the name of two trustees, Marvin I. Wiener and Hazel Brown, who held under a trust agreement signed by the purchasers. Subsequently Hazel Brown resigned as trustee and was succeeded by Sidney M. Bodzin. The price for which the property was purchased was $1,000,000.00, to which the several purchasers contributed in accordance with their proportionate interests, for the down payment, and became obligated for the mortgage payments, taxes and any other necessary expenses. The broker received no commission but was accorded a 4.77% interest by the beneficiaries.
The property thus acquired was to be held for resale, hopefully at a profit. No development or improvements were made thereon, and no business was conducted thereon. There was no plan or expectation to receive profits from the efforts of any other persons, or from any source other than by favorable resale. The control of the property was in the beneficiaries. The trustees were authorized to negotiate for resale opportunities, but the trustees were required to notify the beneficial owners of any proposed resale, and no such sale would be made unless authorized by the beneficiaries. The precise provision relating thereto being that no proposed sale would be made if objected to by one-third or more of the beneficiaries. The trust agreement additionally provided for the trustees to collect the amounts when due from the beneficiaries for required payments of mortgage principal and interest, and taxes, assessments or other expenses. There was a provision that upon default by a beneficial owner in payment of such items due from him the other beneficiaries would be charged ratably therefor and the interest of the defaulting beneficiary would be forfeited. It was provided that the trust would continue until the "assets have been liquidated and distributed" which, in this instance, would be until the property was resold and the proceeds distributed.
The property was purchased in May of 1973. In April of 1975, nine of the beneficial owners, apparently having become disenchanted with their investments when the expected sale for profit had not occurred in that interval, filed an action against the then trustees and certain of the other beneficial owners, seeking recission of their purchases, and to enjoin the trustees from taking action consequent to their failure to make deferred payments.[2] The basis of the action was a charge by plaintiffs that acquisition of their ownership interests represented sales to them of securities in violation of the Sale of Securities Act, Chapter 517, Florida Statutes (1975). The definition of "Security" as set out in the Act includes "beneficial interest in title to property". Section 517.02(1).
In the pleadings, as on this appeal, the parties took opposite views as to the legal effect of the transaction. Plaintiffs contended their beneficial interests were securities, subject to control or regulatory provisions of said Chapter 517. The defendants-appellants contended the beneficial interests were not subject to Chapter 517, because their interests represented purchase of real estate held only for resale, and that the real estate transaction was not an enterprise in which profits were to come solely from the efforts of others.
Plaintiffs moved for an order for the Florida Division of Security to "intervene as amicus curiae". Such an order was entered, over defendants' objection. The "intervenor" filed no pleadings and took no part in the proceedings, other than by the writing of a letter by the Division Director to the judge, which became a part of the record. Therein, the Director informed the court it was his opinion that "a `security' as that term is found in Chapter 517, F.S., is present in this matter". In support of that expressed opinion, the director's letter quoted from the definition of security as set out in the statute and stated he believed that in this matter it could be found there were *1305 five types of securities, in addition to beneficial interest in title to the property.[3]
By his letter it is indicated the Director felt the interests in title to real estate held by these parties were securities subject to regulation under the Act simply because of the fact that they fell within the definition of security, overlooking the point that it is the substance of the transaction and not its shadow that determines whether or not the transaction is within the grasp of the statute. Opposed to plaintiffs' motion for summary judgment and in support of their motion, the defendants presented a lengthy affidavit of a law school professor. After relating the facts of the transaction and discussing the terms of the trust agreement as it related to control of the property by the beneficial owners and the limited and ministerial duties of the trustees, that affiant expressed the opinion that "the beneficial interests in the trust are not `securities' as the term is defined in Chapter 517 of the Florida Statutes" and that "the regulations, recission, anti-fraud and other provisions of the Florida securities law are inapplicable to this matter". As basis for that opinion, the affiant stated that Federal and State courts have held repeatedly that "the substance of a transaction rather than its form should govern the determination of whether a `security' is involved". It was noted that the intention of the parties was to purchase certain real estate, and that the fact they did so by taking title in the name of trustees instead of taking title in the names of all of the purchasers was to simplify the purchase and subsequent sale thereof. The opinion thus expressed was supported by the citation of numerous authorities.
In addition to those contrary opinions supplied to the court there were certain discovery depositions. However, the basic facts before the court were few. Principal among them were that what was involved was a real estate transaction, whereby a number of persons together purchased certain unimproved land from a third party owner thereof; that they took title in the name of trustees; that the property was acquired and held with expectation of deriving profit from the subsequent sale thereof by the beneficial owners, who had the sole control of the resale thereof; and that the transaction was not an investment of money in a common enterprise in which profits were to come from the efforts of persons other than themselves. As such, the interests acquired by the beneficial owners did not represent sales to them of "securities" in violation of said Chapter 517.
At the outset of discussion of the legal effect of such transaction, it is noted that the remedial section of the statute (517.21) provides that every sale made in violation of Chapter 517 shall be voidable at the election of the purchaser and that the person making the sale (and agents of the seller personally participating or aiding in making the sale) shall be liable to the purchaser for the amount paid by him, with interest, reasonable attorney fees and costs, upon tender of return of the "security" involved. In this instance the property was purchased from a third party. The action that was filed was not to rescind that purchase nor was it for recovery against the seller. This action was brought by certain of the purchasers against others of the beneficial interest owners, including the broker, and against the trustees, none of whom were the sellers and none of whom were persons against whom recission could be claimed.
However, even if this action had been brought against the seller from whom the plaintiffs purchased the real estate, the bare fact that by taking title in the name of trustees their purchase of the property had resulted in their acquiring beneficial interests *1306 in the real estate, which term is within the definition of "security" in Chapter 517, would not ipso facto support a conclusion that the interest represented a "security" within the meaning and intent of the Act, or had amounted to sales to them in violation of the Act.
The test is not whether the interest of the owners is of a kind or character within the definition of "security" in the statute. The form should be disregarded for the substance, and the emphasis should be on economic reality. In application thereof one controlling test that is approved is that a transaction will not be held to be within the Act if not within its spirit and intention. A transaction is not such when it is not an investment of money in a common enterprise in which profits are to come from the efforts of others, and when there is not reasonable expectation of profits of a common enterprise to be derived from the entrepreneurial or managerial efforts of others. See: Securities & Exchange Commission v. W.J. Howey Company, 328 U.S. 293, 300, 66 S.Ct. 1100, 90 L.Ed. 1244 (1945); United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); Grenader v. Spitz, 537 F.2d 612 (2nd Cir.1976); Willmont v. Tellone, 137 So.2d 610 (Fla.2d DCA 1962); Lapidus v. Rever, 174 So.2d 459 (Fla.3d DCA 1965).
In our opinion the substance of this transaction, when measured against the tests established in law, is such that it is not under or subject to the provisions of Chapter 517, Florida Statutes (1975). It was error for the court to hold the contrary and on that basis to grant partial summary judgment in favor of the plaintiffs, and to deny summary judgment to the defendants.
For the reasons stated the order granting partial summary judgment to the plaintiffs is reversed. Since all relief sought was predicated on the plaintiffs' assumption that their beneficial interests represented sales to them in violation of Chapter 517, Florida Statutes (1975), which we hold was incorrect, this cause is remanded to the circuit court with direction to enter summary judgment in favor of the defendants.
It is so ordered.
NOTES
[1] The order appealed from was as follows:

"THIS CAUSE having come before the Court on Plaintiffs' Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment, and the Court having reviewed the pleadings and heard argument of counsel, it is,
"ORDERED AND ADJUDGED that Defendants' Cross Motion for Summary Judgment is denied, and Plaintiffs' Motion for Summary Judgment is granted, and the Court has determined as a matter of law that the subject `beneficial interests' are securities, pursuant to Chapter 517 of the Florida Statutes."
[2] Application for such injunctive relief was heard and denied.
[3] The Director's letter stated:

"I believe that, at least, the following types of securities can be found in this matter:
"(1). Evidence of indebtedness;
"(2). Certificate of interest or participation;
"(3). Certificate of interest in a profit-sharing agreement;
"(4). Investment contract;
"(5). Beneficial interest in title to property, profits, or earnings;
"(6). Interest in or under a profit-sharing or participation agreement or scheme."