363 So.2d 590 (1978)
Roger BROWN, Appellant,
v.
Magel H. RAIRIGH and Richard C. Whiteford, As Personal Representatives of the Estate of W. Wayne Rairigh, Deceased, Appellees.
No. 77-648.
District Court of Appeal of Florida, Fourth District.
October 25, 1978.
*591 Eugene L. Heinrich of McCune, Hiaasen, Crum, Ferris & Gardner, Fort Lauderdale, for appellant.
Michael W. Melvin of Kennedy & Melvin, Fort Lauderdale, for appellees.
LETTS, Judge.
This case involves one friend buying from another a 10% interest in 5 harness race horses, which transaction the trial court ruled, as a matter of law, to be the sale of a "security" in violation of the Florida Blue Sky Laws. We reverse.
The appellant's primary occupation is that of a successful public relations executive in New York. However, he is a legal resident of Fort Lauderdale and spends much of his time owning, breeding, raising and racing harness horses at the Pompano track. The appellee investor was a wealthy businessman who met the appellant socially on several occasions, so that the relationship between the two grew into a hospitality swapping friendship. Inescapably the public relations executive's love of horses and his involvement with them became a topic of discussion. It is disputed as to which of the two first suggested that the investor buy an interest in some of the 15 horses then owned by the other, but it is undisputed that the public relations executive had not, with only one exception, previously sold any interest in any of his horses in the manner employed in the case at bar. As such, it is apparent from the facts that he was not in the business of promoting and selling percentage interests in race horses.
Pursuant to their discussions the investor purchased a 10% interest in 5 horses at the end of February, 1974, for $11,675. Under the terms of the agreement, the investor was to receive 10% of the winnings of any, or all, of the 5 horses and pay 10% of all bills and stake fees thereon. Meanwhile, although the agreement is silent on this aspect, it is also undisputed that the public relations executive was to retain custody and control of the horses and undertake all the work of training, caring for and racing them. The agreement further gave the investor an option to purchase a further 25% interest in the same 5 horses at the same price they were valued at on the date of the original agreement (even if the horses were very successful and obviously, therefore, more valuable). Finally, the investor was also given the privilege of selling the horses back to the public relations executive, providing he did so by January 1, 1975, (the price was to be the market value at time of resale, same to be determined mutually, or by a mutually agreeable horse assessor).
We suspect that had the horses won, the investor would have been most content, but they did not and suffered health problems besides. The investor then wanted his money back, but failed to exercise his privilege of resale on or before the cutoff date. Undismayed, he then claimed that he was sold an unregistered security in violation of Section *592 517.07 Florida Statutes (1977),[1] and demanded his original stake back plus interest and attorney's fees.
It has long been recognized that, absent some type of governmental control over the issuance of, and transactions in, securities, many opportunistic and often unscrupulous issuers and dealers in securities will defraud naive or unsophisticated purchasers. 69 Am.Jur.2d 591. The legislative purpose then, in enacting these so called "Blue Sky Laws," was aimed at "speculative schemes which have no more basis than so many feet of `blue sky;'" Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480 (1917).[2]
Like so many other regulatory statutes, just as fast as they are enacted, the same unscrupulous issuers find more and more loopholes which the legislature keeps on plugging, until the latter day result is a statute that technically might prevent two brothers from purchasing a share in their sister's business, without going through the frighteningly complicated and expensive business of registration. Thus we find, under Section 517.02(1), Florida Statutes (1977), that the word "security" spawns an 18 line definition, in which is included the term "any investment contract." However the term "investment contract" is not itself statutorily defined and we therefore are required to look to the Supreme Court case of S.E.C. v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) for the classic definition of the term. This definition, known as the Howey test, requires:
(1) an investment of money
(2) in a common enterprise
(3) with the expectation of profits to be derived solely from the efforts of the promoter or a third party.[3]
Adapting these three criteria to the case at bar we have no trouble in finding that there has been an investment of money and that the profits are to be derived solely from the efforts of the promoter.[4] We also can take judicial notice of the fact that joint ownership of race horses can be big business indeed, rising to astronomical levels when we consider the likes of Secretariat, Seattle Slew and Affirmed. The question however remains, do they all necessarily involve a common enterprise and more to the point, is a common enterprise to be found in the case at bar? We think not.
There are basically three lines of cases interpreting the phrase "common enterprise." First of all, there are those that require more than one investor and some kind of joint participation or dependency between investors must be present. See for example, Milnarik v. M-S Commodities, Inc., 457 F.2d 274 (7th Circuit 1972). This view has been adopted by our own Third District in the last few months. See Blacker v. Shearson Hayden Stone, 358 So.2d 1147, opinion filed May 16, 1978.
There is a second line of cases that finds a common enterprise even though there is no joint participation or dependency among the investors. The courts reason that, even though there is no actual interaction between investors, the fortunes of all of them are inextricably tied to the effectiveness of the promoter in securing multiple recruits, so that in truth they are not independent of each other. See for example, S.E.C. v. *593 Koscot Interplanetary, Inc., 497 F.2d 473 (5th Circuit 1974).
The third line of cases simply holds that a common enterprise exists even where there is only a one-on-one relationship between the promoter and investor. Huberman v. Denny's Restaurants, Inc., 337 F. Supp. 1249 (N.D.Cal. 1972). In Huberman the court found a common enterprise even though only two parties were involved because both of them had an interest in the success of the venture and "were going to benefit from the productive operation of the [isolated transaction]."
To us, this Huberman case goes too far because it reduces the word "common" to mere surplusage and the word "enterprise" is all that is left. Obviously even one single promoter and one investor are inevitably involved in a mutual project, or enterprise, hopefully for profit, unless the promoter plans to abscond with the funds. Moreover, every applicable situation is going to involve at least one investor and one promoter. Therefore, if this single union is all that is required to constitute a "common enterprise," then the definition set forth in the Howey test is meaningless. We choose to believe it must have some meaning and thus we adopt the view that not only should there be more than one investor, but there should be some form of interaction between the investors, or, in the alternative, if there is no such interaction between investors then the success of the enterprise should be dependent upon obtaining a number of investors.[5]
The Supreme Court in Howey, supra, also seems to suggest that investment contracts require multiple investors. Howey stated:
A common enterprise managed by respondents or third parties with adequate personnel and equipment is therefore essential if the investors are to achieve their paramount aim of a return on their investments.
66 S.Ct. at 1103.
All this being so, the case at bar is not a common enterprise for there is only one investor. There being no common enterprise, the sale involved was not that of a security and Section 517, of the Florida Statutes is not applicable. In so holding, we have not forgotten the case of Marshall v. Harris, 276 Or. 447, 555 P.2d 756 (1976) which is another case of percentage investment in race horses. There the court found the investment to be an "investment contract" and therefore a "security." However the court, either accidently or on purpose, never got around to discussing the required common enterprise element of an investment contract as defined by the Howey test. Nonetheless we note that there were five investors in Marshall v. Harris and at least some participation by the investors in one and the same horse. For this reason we would distinguish it.
We are fortunate to be able to decide this case upon the relatively simple premise that there was only one investor. However by doing so we do not mean to preclude the possibility that we might have arrived at the same result if the appellee's wife and or brother had similarly purchased additional fractional interests. Section 517.21 provides that sales made in violation of the chapter are "voidable" rather than void. This being so, we note, for example, the language of Dokken v. Minnesota-Ohio Oil, 232 So.2d 200 (Fla. 2nd DCA 1970) wherein the court stated,
... the courts have held that the purchaser of securities sold in violation of the [statute] may be estopped by his conduct from asserting the invalidity of the transaction.
* * * * * *
Estoppel depends upon the facts and circumstances of each case.
As was noted by the dissent in Marshall v. Harris:
It is going to be a shock to a rancher who sells a fractional interest in a horse or a registered bull to his neighbors to learn *594 that his sale is considered in the same category as the sale of a worthless corporate stock or security and subject to the Blue Sky Law.
I do not believe the legislature intended the plaintiffs' sale in the case at bar to be subject to the [Oregon] Securities Law.
We are in sympathy with the underlying thought in this dissent and if a similar issue is presented to us, we will carefully evaluate the attendant facts and circumstances to see if estoppel would be applicable. If an investor is fully informed as to all aspects of his investment prior to purchase, and if he is fully aware of the use to which his proceeds will be put, then in such event his conduct, when considered together with other facts and circumstances, may well estop him from seeking relief under the Blue Sky Laws, providing however that the promoter or issuer is not in the business of promoting or issuing and providing further that the sale has not been made with any direct or indirect intent to violate or evade the provisions of Section 517 of the Florida Statutes.
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT IN ACCORDANCE HEREWITH.
DOWNEY, C.J., and DAUKSCH, J., concur.
NOTES
[1] We agree this does not qualify as an isolated sale under § 517.06(3). The vendor here must, by definition in § 517.02(5), be an issuer. However, we doubt that the legislature intended that a sale such as this could not be considered as an isolated sale.
[2] There is no concomitant protection for unsophisticated sellers who are persuaded to sell part of their businesses by purchasers, the latter knowing full well that they have an absolute out, plus interest and attorneys fees, if the business flounders.
[3] The word "solely" has been modified in several cases and expanded to cover those who control the essential managerial conduct. S.E.C. v. Koscot Interplanetary, Inc. (infra).
[4] The statute defines promoter in a roundabout way. § 517.02(5) says: "Issuer" shall mean and include every person who proposes to issue, has issued, or shall hereafter issue any security. Any person who acts as a promoter for and on behalf of a corporation, trust, or unincorporated association or partnership of any kind to be formed shall be deemed as issuer.
[5] For a scholarly discourse on the ever expanding regulatory field of securities, see Mofsky, Some Comments On The Expanding Definition of "Security," 27 U of Miami L.Rev. 395.