386 So.2d 1216 (1980)
Randolph Jackson RUDD, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1202/T4-124.
District Court of Appeal of Florida, Fifth District.
July 2, 1980.
Rehearing Denied August 26, 1980.
*1217 Robert B. White, Jr., Orlando, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Edward M. Chew, Asst. Atty. Gen., Daytona Beach, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
This is an appeal from a conviction in the Circuit Court for Orange County for the sale of an unregistered security, fraudulent sale of a security, and sale of a security by an unregistered salesman.
The question which we find determinative of this appeal is whether there was a sale of a security within the contemplation of section 517.07, Florida Statutes (1973).
We conclude that there was no sale of such security and reverse.
*1218 The state's complaining witness, Mrs. Golden Zimmerley, an uneducated woman, was introduced to appellant, Randolph Jackson Rudd, by her sister-in-law. Rudd discussed with Mrs. Zimmerley certain building projects in which he was involved and as a result of some negotiation, Mrs. Zimmerley delivered $25,000.00 to him pursuant to an agreement prepared by Rudd and entitled, "Letter of Intent." Rudd received the money on September 24, 1973. After October 12, 1973, Mrs. Zimmerley heard nothing more from him and her attempts to contact him were unsuccessful. No money was ever returned.
The Florida Legislature enacted the Sale of Securities Act to protect the public from fraudulent and deceptive practices in the securities market. O'Neill v. State, 336 So.2d 699 (Fla. 4th DCA 1976). To effectuate these remedial purposes, the Legislature broadly defined those transactions and instruments which constitute a security in section 517.02(1),[1] Florida Statutes (1973), to include:
[A]ny note, stock, treasury stock, bond, debenture, evidence or indebtedness, certificate of interest or participation, whiskey warehouse receipt or other commodity warehouse receipt, or right to subscribe to any of the foregoing; certificates of interest in a profit-sharing agreement or the right to participate therein; certificate of interest in an oil, gas, petroleum, mineral, or mining title or lease, or the right to participate therein; collateral trust certificate, preorganization certificate, preorganization subscription, or any transferable share, investment contract, or beneficial interest in title to property, profits, or earnings; interests in or under a profit-sharing or participation agreement or scheme, or any other instrument commonly known as a security, including an interim or temporary bond, debenture, note, certificate, or receipt for a security or for subscription to a security.
There is growing support for the view, however, that the test of the existence of a security is not whether the interest of the owner is of a kind or character within the definition of "security" in the statute. Wiener v. Brown, 356 So.2d 1302, 1306 (Fla. 3d DCA 1978). See also United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). Rather, form should be disregarded for substance and the emphasis should be on economic reality, with a transaction excluded from the act if not within its spirit and intention. Wiener at 1306.
Therefore, whether a particular investment constitutes a security depends on the facts and circumstances of each individual case. Levine v. I.R.E. Properties, Inc., 344 So.2d 938 (Fla. 3d DCA 1977). Guidance is available from the United States Supreme Court which in S.E.C. v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), established a three-pronged test for determining whether a transaction constituted a security or, more specifically, an "investment contract" as that term is used in section 2(1), Securities Act of 1933, as amended by section 3(a)(10), Securities Exchange Act of 1934 [15 U.S.C. § 78(c)(10)]. The court defined "investment contract" as a contract, transaction or scheme whereby a person invests money in a common enterprise and is led to expect profits solely from the efforts of another. Howey, 328 U.S. at 297, 66 S.Ct. at 1102, 90 L.Ed. at 1249. The Howey test has been accepted and applied in Florida. See, e.g., Brown v. Rairigh, 363 So.2d 590 (Fla. 4th DCA 1978); Levine v. I.R.E. Properties, Inc., 344 So.2d 938 (Fla. 3d DCA 1977).
The state correctly points out that the Howey test, as developed, applies to "investment contracts" and is not the exclusive test for determining whether an instrument or transaction is a security. See Weiner at 1306. The United States Supreme Court, however, in United Housing, stated that the Howey test embodies the essential attributes that run throughout its *1219 decisions defining a "security." The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entreprenurial or managerial efforts of others. United Housing, 421 U.S. at 851, 95 S.Ct. at 2060, 44 L.Ed.2d at 632. It should also be noted that in Levine, the Third District Court of Appeal defined "security" by using the Howey test, without distinguishing between the broad term "security" and the narrower "investment contract."
Application of the Howey test in the instant case requires that three elements be established:
(1) An investment of money;
(2) The existence of a common enterprise;
(3) An expectation of profits to be derived solely from the efforts of another.
The term "loan" and "investment" are often used when referring to the same type of transaction. However, a loan, which is the expectation of a return of the money transferred plus an agreed return, is not an investment which under the Howey test requires an agreement to share in the profits.
It is this point that controls the case before us. The state has failed to prove that the transaction was an investment and not a loan. The state's evidence that the transaction was an investment consisted solely of the testimony of Mrs. Zimmerley and the "Letter of Intent." Mrs. Zimmerley used the terms "loan" and "investment" interchangeably and admitted she did not know the difference. In addition, the "Letter of Intent" referred to the $25,000.00 as a "renewable loan."
While it does not appear in the record, we have concluded that the state elected to prosecute under section 517.02(1) because the statute of limitations[2] had run on those offenses more fittingly tailored to prohibit and punish Rudd's criminal conduct.[3]
While it offends us to see Rudd's conduct go unpunished we cannot approve prosecution under an inapplicable statute, even though the proper section is no longer available, regardless of how desirable that result may be.
REVERSED and REMANDED with directions to discharge defendant.
DAUKSCH, C.J., and ORFINGER, J., concur.
NOTES
[1] This section was amended November 1, 1978 and now appears as section 517.021(15). The revision has left the prior definition essentially unchanged.
[2] Under the 1973 Florida Statutes, the statute of limitations for prosecution of offenses committed under the Sale of Securities Act was five years. § 517.302, Fla. Stat. (1973). The period for prosecution of larceny was two years. § 932.465(2), Fla. Stat. (1973). Here, the initial information was not filed against appellant until October, 1977, some four years after appellant received the money from Mrs. Zimmerley.
[3] Section 811.021, Florida Statutes (1973)  Larceny defined; penalties; sufficiency of indictment, information or warrant.

(1) A person who with intent to deprive or defraud the true owner of his real or personal property or the use and benefit thereof, or to appropriate the same to the use of the taker or of any other person:
(a) Takes from the possession of the true owner, or of any other person; or obtains from such person possession by color or aid of fraudulent or false representations or pretense, or of any false token or writing; or obtains the signature of any person to a written instrument, the false making whereof would be punishable as forgery; or secretes, withholds, or appropriates to his own use, or that of any other the true owner, any money, personal property, goods and chattels, thing in action, evidence of debt, contract, or property, or article of value of any kind; or (b) Having in his possession, custody or control, as a broker, bailee, servant, attorney, agent, employee, clerk, trustee, or officer of any person, association, or corporation, member of co-partnership, pool or joint adventure, or as a person authorized by agreement, or by competent authority, to hold or take such possession, custody, or control, any money, personal thing or action, goods and chattels, evidence of debt, contract, property, or article of value of any kind, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof; shall on conviction, be guilty of larceny.