JORGENSON, Judge,
dissenting.
I respectfully dissent. In my view, the judgment below should be reversed as there is no competent substantial evidence in the record to support the trial court’s findings.[1]
Airport Plaza Limited Partnership [Airport Plaza] appealed from a final judgment of foreclosure and from a final judgment on its third party complaint for recision based upon fraudulent misrepresentation arising from the following transaction.
In April, 1983, Milam Dairy Warehouse Associates [Milam Dairy] entered into an agreement for the sale, leasing, and management of the Milam Dairy Warehouse in which Security Bonded Warehouse was the principal tenant.[2] The seller, the principal tenant, and the leasing-management company were all related entities. The sales agreement contained an express warranty that each tenant’s lease was in full force and effect without modification or default, and that all of the representations in the agreement were correct. The lease for Security Bonded Warehouse provided that it would pay monthly rent of $34,430.83 per month which represented sixty-six percent of the total rent roll of the warehouse. At closing, the seller delivered a Trustee’s Certificate, a Seller’s Certificate, and a Blanket Estoppel and Consent which repeated the earlier warranties and acknowledged that the buyers were relying on the representations made in those documents.
Milam Dairy, which had retained a purchase money mortgage, assigned its interest in the mortgage to United National Bank. In September, 1985, the bank sued to foreclose, alleging that Airport Plaza had defaulted on its mortgage payments. The bank accelerated the debt and demanded the full amount of principal and interest owing.
Airport Plaza answered, raised the affirmative defense of estoppel by wrongful conduct, and filed a third party complaint against Milam Dairy for recision of the sale based upon the seller’s fraudulent misrepresentations.[3] Airport Plaza alleged that Milam Dairy had intentionally misrepresented the amounts of rent that it had been receiving from its anchor tenant, Security Bonded Warehouse, that Airport Plaza had relied on those representations in purchasing the warehouse and that, because the rental receipts were significantly lower than represented, its income had been insufficient and it had not been able to make its mortgage payments. Airport Plaza also sought indemnification from the claims of the bank. The trial court granted Airport Plaza’s motion for summary judgment on the fraud and securities claims. This court reversed, finding that genuine issues of material fact remained regarding fraud and whether the “common enterprise” requirement of a security was met by the presence of more than one investor. United Nat’l *1259 Bank v. Airport Plaza Ltd., 537 So.2d 608 (Fla. 3d DCA 1988).[4] On remand, following a one-day bench trial, the court entered a judgment of foreclosure in favor of United National Bank and entered judgment against Airport Plaza on its third-party complaint against Milam Dairy. The trial court specifically found as follows:
1. The anchor tenant’s lease was not in default when the contract was entered into or at the time of the closing;
2. The buyer did not rely on any particular level of rent collections when signing the contract or at closing;
3. The sellers fully disclosed the actual rent collections from the building;
4. The variance between the rent stated in the leases and the actual total receipts was readily observable;
5. The buyers were not deceived by anything the sellers said or did, or failed to say or do.
I find no substantial competent evidence to support the findings of the trial court. “A trial judge’s findings of fact and conclusions of law come to this court with a presumption of correctness and will not be disturbed unless totally unsupported by competent substantial evidence. However, if a trial court’s decision is ... unsupported by competent substantial evidence, it becomes our duty to reverse.” Randy Int'l, Ltd. v. American Excess Corp., 501 So.2d 667, 670 (Fla. 3d DCA 1987) (citations omitted).
To establish common-law fraud, Airport Plaza had to establish: (1) that Milam Dairy made a false statement concerning a material fact; (2) that Milam Dairy knew that the representation was false or made the representation without knowledge as to its truth or falsity or under circumstances in which Milam Dairy ought to have known of its falsity; (3) that Milam Dairy intended that the representation induce Airport Plaza to act on it; and (4) that Airport Plaza in fact justifiably relied on that misrepresentation to its detriment. See Suntogs of Miami, Inc. v. Burroughs Corp., 433 So.2d 581, 585 (Fla. 3d DCA 1983), rev’d on other grounds, 472 So.2d 1166 (Fla.1985); Alexander/Davis Properties, Inc. v. Graham, 397 So.2d 699, 706 (Fla. 4th DCA), rev. denied, 408 So.2d 1093 (Fla.1981).
At trial, the uncontroverted testimony established all the elements of fraud. Donald Hand, one of the seller’s general partners,[5] testified that, although the seller had certified that the leases were in full force and effect and were not in default, the certification was not true and that Security Bonded Warehouse had not been paying the base rent on the lease and never paid the actual rental called for by the lease.[6] Hand further testified that the current status of rental collections was a major consideration for any prospective purchaser of commercial property.
Jack Pivnick who had negotiated the warehouse purchase for Airport Plaza testified that the purchasers would not have consummated the sale if they had known that the anchor tenant had not regularly paid its rent. According to Pivnick, shortly after closing on the sale, Security Bonded Warehouse stopped paying a “regular and sufficient rent,” and because of the tenant’s defaults, the warehouse project was unable to meet its financial obligations and ultimately did not renew its lease. Pivnick testified that the false warranties made by the seller led the buyers to believe that the property would perform in a way that, in reality, it could never perform, and that “[i]t was doomed to failure in the begin *1260 ning” because the major tenant was in default.[7] This testimony, as well as the testimony that the warranties were false, was uncontroverted.
Furthermore, the evidence was uncontro-verted that there was not full disclosure of the status of the rental receipts. Donald Hand, one of Milam Dairy’s officers, testified that, although Milam Dairy had made available to the buyer records of Milam Dairy’s income and expenses for the preceding fiscal years, there was no way to tell from looking at those statements that the anchor tenant was not meeting its rental obligations under the lease. The records consisted of a schedule of total rental payments and copies of cancelled checks and invoices. There was nothing in the schedule to show that, contrary to Milam Dairy’s representations, Security Bonded Warehouse was not paying the rent it was obligated to pay under the lease. The records did not indicate whether the cancelled checks represented payment of all money due from the tenants. Nothing that was provided connected the cancelled checks to the invoices. Therefore, I find no evidence in the record that the buyers were aware that the representations and warranties made by the seller were false.
Airport Plaza was entitled to rely on the truth of the representations made by Mi-lam Dairy. The seller’s argument that the buyer did not exercise due diligence is not supported by the law. “[A] recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him.” Besett v. Basnett, 389 So.2d 995, 998 (Fla.1980). As the prospective purchaser, Airport Plaza was justified in relying on material representations repeatedly made by Milam Dairy even though it might have ascertained the falsity of the representations had it made an investigation. Besett, 389 So.2d at 998. Airport Plaza had no duty to discover an affirmative misrepresentation by Milam Dairy. See Greene v. Kolpac Builders, 549 So.2d 1150 (Fla. 3d DCA 1989).
In sum, I would hold that Airport Plaza established at trial through uncontroverted testimony that Milam Dairy had fraudulently misrepresented the financial viability of the property which was the subject of the sale. Accordingly, I would reverse the trial court’s order of foreclosure and its order denying Airport Plaza’s claim for common-law fraud and remand with directions to grant Airport Plaza’s plea for recision.

. The nature of the issues raised on appeal required an exhaustive review of the substantial record below. Counsel for appellee made our task of reviewing the record more difficult than it should have been by failing to favor this court with any citations to the record or, in fact, any citations to legal authority in his answer brief. We regret any inconvenience caused to the parties by our delay in ruling on this case.

. Security Bonded Warehouse occupied eighty percent of the warehouse premises.

.Airport Plaza sought recision based upon two theories: common law fraudulent misrepresentation and violation of section 517.301, Florida Statutes (1985) (fraudulent securities transactions). My review of the record leads me to reject Airport Plaza’s contention that the “common enterprise” requirement of a security was met. I would hold that the sale of property involved in this litigation was not a sale of a security within the meaning of chapter 517. See generally Brown v. Rairigh, 363 So.2d 590 (Fla. 4th DCA 1978).

.The order of final summary judgment that was the subject of the prior appeal found fraud in various misrepresentations that were different from the misrepresentations which Airport Plaza proved at the trial which led to the final judgment now under review.

. Hand was also an officer of Trans Am Corporation, the management company for the warehouse.

. Misrepresentations as to past income are proper predicates for alleging fraud. Butts v. Dragstrem, 349 So.2d 1205 (Fla. 1st DCA 1977), cert. denied, 361 So.2d 831 (Fla. 1978).

. Airport Plaza’s complaint was not premised upon false representations of future performance which do not generally give rise to actionable fraud. See Sleight v. Sun & Surf Realty, Inc., 410 So.2d 998 (Fla. 3d DCA 1982). Instead, the fraud claim was premised upon false representations about the past and present rental receipts.