859 So.2d 1260 (2003)
Philip E. MEHL, Jr., and Susan E. Mehl, Appellants,
v.
OFFICE OF FINANCIAL REGULATION, Appellee.
No. 1D02-4623.
District Court of Appeal of Florida, First District.
November 25, 2003.
*1261 Gary Brookmyer of Brookmyer, Hochman, Probst & Nadeau, P.A., Palm Beach Gardens, for Appellants.
Peter G. Fisher, Senior Attorney, Office of Financial Regulation, Tallahassee, for Appellee.
ERVIN, J.
This is an appeal from a final administrative order entered by the Department of Banking and Finance, predecessor to appellee, Office of Financial Regulation (OFR), which determined that a pay telephone sale and lease-back program marketed and sold to Florida investors by the appellants, Philip E. Mehl, Jr., and Susan E. Mehl, constituted an investment contract, subject to regulation under the Florida Securities and Investor Protection Act (sections 517.011-32, Florida Statutes (2000)). Appellants contend that reversal is required based upon Securities & Exchange Commission v. ETS Payphones, Inc., 300 F.3d 1281 (11th Cir.2002), cert. granted sub nom. Securities & Exchange Commission v. Edwards, __ U.S. ___, 123 S.Ct. 1788, 155 L.Ed.2d 665 (2003) *1262 (No. 02-1196) (hereinafter "S.E.C. v. ETS"). We disagree and affirm.
The Mehls were charged by administrative complaint with selling unregistered securities, one of which was an ETS pay phone program, and acting as unregistered dealers. The evidence disclosed that the pay phone investment program, which was not registered, was offered through ETS Payphones, Inc., and its affiliates. ETS was incorporated to provide management services, including placement, advertising, maintenance, coin collecting, and accounting on behalf of the purchasers. After investors bought the phones at prices ranging from $6,000 to $7,000 per unit, they simultaneously leased them back to ETS for a five-year period. The owners in turn were guaranteed a fixed rental income of $80 per month or more, depending on the price of the phones, until the expiration of the lease, representing an approximate 14-percent annual return on each investment. At the conclusion of the five-year lease, the owners had the option of assuming the maintenance and operational responsibilities involved with the pay phones, attempting to enter into new lease agreements, or selling the telephones for their original purchase price to the management company. Unfortunately, none of these options materialized, because ETS filed a voluntary petition for bankruptcy in 2000, and ceased lease payments and buy-back guarantees.
The administrative law judge (ALJ) found that the ETS pay phone sales, together with the leases back to ETS, constituted investment contracts, as established in the test approved by the United States Supreme Court in Securities & Exchange Commission v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).[1] Under the Howey test, an investment contract exists if the following elements are established: (1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others.[2] The ALJ decided that all three prongs had been satisfied. Thus, the ALJ found that the Mehls' sales of ETS pay phones constituted the conveyance of unregistered securities, and he concluded by recommending the imposition of administrative fines of $2,390,000 against Philip E. Mehl, Jr., and $2,880,000 against his wife, Susan E. Mehl.
After the 15-day period allowed by section 120.57(1)(k), Florida Statutes (2002), for filing exceptions to the recommended order had expired, appellants moved to vacate the order and dismiss the administrative complaint for lack of subject-matter jurisdiction. Appellants' motion was based on a recently filed decision of the Eleventh Circuit Court of Appeals in S.E.C. v. ETS, which had determined, in a case factually similar to the present, that the lease-back transaction of ETS pay phones did not constitute a security, because the third "profits" prong of Howey was lacking, and, therefore, that the Securities and Exchange Commission lacked subject-matter jurisdiction over the complaint.
In adopting the ALJ's recommended order in its entirety, and rejecting the decision of the Eleventh Circuit, the final order concluded that all three parts of the Howey test had been satisfied. The agency agreed with the ALJ that the lease *1263 arrangement constituted an investment contract, giving it subject-matter jurisdiction, and thereby justified the ALJ's denial of the appellants' motion to vacate and dismiss. Hence this appeal.
Initially, we reject in part the OFR's argument that all of the issues raised by appellants were not preserved, because they were not made within the time required for filing exceptions to the recommended order. We note that the OFR is vested with authority to administer and enforce all provisions of the Florida Securities and Investor Protection Act, but if a security is not involved, OFR does not have subject-matter jurisdiction. Not only was appellants' second issue, i.e., that the leasing of a pay phone does not constitute a security in that there is no expectation of profits, preserved by the motion to vacate, but we note as well that the issue, in that it relates to OFR's subject-matter jurisdiction, may be raised at any time, even for the first time on appeal.
We conclude, however, that appellants' argument relating to the sufficiency of the evidence to support a finding of common enterprise was not preserved. In their motion to vacate, appellants claimed only that the recommended order was not in accord with the decision of the Eleventh Circuit Court of Appeals in S.E.C. v. ETS. Appellants now argue that the OFR erred in refusing to dismiss the administrative complaint for lack of jurisdiction, because the second and third prongs of the Howey test were not satisfied,[3] as required by that decision. The Eleventh Circuit, however, specifically declined to reach the issue of whether a showing of a common enterprise had there been made; it decided only that the last prong, "expectation of profits," was not satisfied. S.E.C. v. ETS, 300 F.3d at 1284. Because appellants' argument as to the issue of common enterprise was not preserved due to the appellants' failure to file timely exceptions to the recommended order, the ALJ's factual finding is binding; therefore, we affirm as to it.
The pivotal question in this appeal is whether the profits prong was established. In concluding that it was not, the Eleventh Circuit in S.E.C. v. ETS relied greatly on language used by the Supreme Court in United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), to the effect that the term profits meant either "a participation in earnings by the investor or capital appreciation." S.E.C. v. ETS, 300 F.3d at 1284. It noted that capital appreciation was not involved, and, turning to the question of whether there was a participation in earnings by investors, the Eleventh Circuit concluded that fixed-lease payments made to the owners of the pay phones could not be considered a participation in earnings because the owners were not seeking profits in the sense of receiving earnings from the company. The dispositive language of S.E.C. v. ETS is as follows:
In our opinion ... the determining factor is the fact that investors were entitled to their lease payments under their contracts with ETS. Because their returns were contractually guaranteed, those returns were not derived from the efforts of ... anyone ... at ETS; rather, they were derived as a benefit of the investors' bargain under the contract.
Id. at 1285.
It is clear to us, because of the similarity of the facts in both this case and S.E.C. v. ETS, that if the Eleventh Circuit's decision were binding on Florida courts, we would be compelled to follow it. *1264 We conclude, however, it is not controlling. Initially, we agree with OFR that while the various states' securities laws operate in conjunction with federal law, federal laws do not supersede state law. See E.F. Hutton & Co. v. Rousseff, 537 So.2d 978 (Fla. 1989). In fact, the United States Supreme Court has itself acknowledged that it lacks "jurisdiction authoritatively to construe state legislation." Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (quoting United States v. Thirty-seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971)).
In refusing to honor the Eleventh Circuit's decision in S.E.C. v. ETS, OFR observed that although there were similarities between the federal and Florida acts, there were also decided dissimilarities; one being that the federal act emphasizes "the protection and stability of the broader capital markets as contrasted with the state focus on the protection of the private individual." OFR continued with the following pertinent comments:
Florida law does not use such a narrow construction of `profit'; it has not distinguished between fixed and variable returns to the investor. Florida law looks to both the economic reality of the transaction and the way the promoter has characterized the return. Here, the investor motivation was the rate of return on the investment, not participating in the payphone business. ETS literature referred to the return on investment as profits.... Thus, if the investor is attracted solely by the prospect of the return and if ETS literature touted the return as a profit, there is no reason to believe that a state court would require more. Lastly, because the investment was `guaranteed[,'] investors were led to believe this investment was safe. The economic reality is that the guarantee was not a bargained for contractual term. It was nothing more than the promoter's means of lulling the investor into a feeling of security and thereby parting him from his money.
(Pages 5-6 of final order) (citations omitted).
OFR's analysis of whether the transaction constituted an investment contract appears altogether consistent with Florida case law. As noted in Rudd v. State, 386 So.2d 1216, 1218 (Fla. 5th DCA 1980): "[F]orm should be disregarded for substance and the emphasis should be on economic reality, with a transaction excluded from the act if not within its spirit and intention." Indeed, OFR's construction of the profits prong is consistent with the approach followed by other states in regard to their own securities laws. For example, the Supreme Court of Tennessee in King v. Pope, 91 S.W.3d 314 (Tenn. 2002), explained that a dual system of securities regulation by the federal government and states was required to serve different purposes. It observed that the goal of the states' regulations of securities was designed to protect investors, while federal securities laws were enacted to serve the broader purpose of protecting the integrity of the increasingly nationalized market. Id. at 319-20.
The factor of investor motivation, which OFR placed special emphasis on, was supported by the facts that the investors were predominantly elderly, retired persons with little or no knowledge about the management of the pay phone industry. In fact, they had no interest in operating the pay phones system, but rather were attracted by the represented guarantee of a fixed 14-percent return on their investment, and they were completely dependent on ETS's expertise to achieve such gain. Moreover, the return of the investors' capital investment at or before the end of the lease period was represented as guaranteed *1265 to them by the repurchase agreements. The program was advertised as "virtually recession proof," which could produce revenue an entire year and "offer immediate, steady cash flow." Retirees were encouraged to liquidate annuities and other retirement plans in order to invest in the program.
Florida case law is committed to the rule that the administrative construction of a statute by an agency charged with its administration is entitled to great weight. Dep't of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815, 820 (Fla.1983). We find nothing in OFR's interpretation of the Florida Securities and Investor Protection Act it is directed to regulate that is inconsistent with the purpose behind the creation of the Act. We therefore agree with OFR that the S.E.C. v. ETS opinion is not harmonious with Florida law in that it focused too narrowly on the parties' contractual agreements, without examining all of the factors surrounding the transaction, including particularly the representations made to the purchasers by appellants, as well as the reliance placed by the inexperienced investors on the managerial skills of others. Cf. Farag v. Nat'l Databank Subscriptions, Inc., 448 So.2d 1098, 1101 (Fla. 2d DCA 1984).
Because we conclude that the third Howey element was satisfied pursuant to the broad objectives of Florida law, we agree that OFR was permitted to reach a conclusion different from that in S.E.C. v. ETS, for the reason that Florida's interpretation of security takes into consideration the "legislative purpose of the Florida Securities and Investor Protection Act[, which,] as its title makes clear, [was designed] to protect the public from fraudulent and deceptive practices in the sale and marketing of securities." Arthur Young & Co. v. Mariner Corp., 630 So.2d 1199, 1203 (Fla. 4th DCA 1994).[4]
AFFIRMED.
BOOTH and KAHN, JJ., concur.
NOTES
[1] An investment contract is included in the list of items under the definition of security, see section 517.021(19)(q), Florida Statutes (2000), but is otherwise undefined in Florida law.
[2] The Howey test has been accepted and applied in Florida. See Brown v. Rairigh, 363 So.2d 590 (Fla. 4th DCA 1978); Levine v. I.R.E. Props., Inc., 344 So.2d 938 (Fla. 3d DCA 1977).
[3] No contention is made that the first prong, an investment of money, was not established.
[4] In that we conclude this case was properly decided under Florida law, we do not reach the alternative reason advanced by OFR for rejecting the Eleventh Circuit's interpretation of the third prong of the Howey test, which was that the court, in reaching its decision, had taken out of context certain examples provided by the Supreme Court in United Housing Foundation, Inc. v. Forman, and ignored other language in Forman that was consistent with Florida's interpretation of Howey.