53950, 53951. D. K. PROPERTIES, INC. et al.
v. OSBORNE; and vice versa.

SMITH, Judge.

D. K. Properties, Larry E. Wilensky, Larry E. Wilensky Co., and Kenneth Seitz, the appellants, contend the trial court erred in granting Osborne's motion for summary judgment and in denying their motion for summary judgment. Osborne filed a cross appeal asserting that the trial court erred in granting Levick's motion for summary judgment. Finding that the trial court erred in granting Osborne's and Levick's motions and that the court correctly denied appellants' motion, we reverse in part and affirm in part.

Under the terms of appellants' and cross appellee's investment scheme, which was not publicly advertised, fractional shares of certain plots of undeveloped real estate were sold to interested investors. Each investor held title to his share(s) in his own name, as a tenant in common with the sixteen other investors. Osborne invested in two plots of the real estate. He made his first purchase on September 24, 1973, his second on December 30, 1974. By the terms of the co-tenancy agreement subject to which each investor held his share(s), all the land was to be retained for "investment purposes only"; that is, the investors planned to maintain the land in its rural state and then to sell it for profit after it had appreciated in value. The agreement of co-tenancy also provided that Kenneth Seitz, "or such other person as may be selected by the vote of holders of a majority of equity interest" in the property, was to be the property manager. His duties were to collect payments from the investors and to pay expenses and taxes incurred on the land. The

agreement went on to grant Larry E. Wilensky Co. "the exclusive right to act as sales broker" for a period of eight years. The agreement further stipulated that, before a sale of any part of the property could take place, investors holding 60% of the equity interest in the syndication had to approve the sale. Each investor could obtain his own "bona fide offer" and sell his share(s) at any time, contingent on the approval of holders of 60% of the equity interest and subject to a right of first refusal in the other investors.

Mark Levick was an assistant secretary of D. K. Properties at the time of the occurrence of the involved land sales. Levick, an attorney, also assisted in the preparation of the documents closing the sales and signed the closing papers in his capacity as assistant secretary of D. K. Properties.

Osborne filed this suit alleging that the land sales constituted sales of "securities" under the Georgia Securities Acts of 1957 and 1973 (Ga. L. 1957, p. 134 et seq.; Ga. L. 1973, p. 1202 et seq.). (The 1973 sale would be governed by the 1957 Act; the 1974 sale by the 1973 Act.) He further alleged that, under Ga. L. 1973, pp. 1202, 1250 and Ga. L. 1957, pp. 134, 161, he was entitled to void the two sales and recover his $4,800 investment because of the fact, which is uncontradicted in the record, that the "securities" had not been registered.

1. Did the land sales constitute sales of that type of security known as an investment contract? Because of the considerable contractual control the investors retained over a decision to sell any interest they had purchased in the syndication, it cannot be said as a matter of law that the initial sales to each investor involved securities; therefore, the trial court erred in granting summary judgment for Osborne.

In *Jaciewicki v. Gordarl Associates, Inc.,* 132 Ga. App. 888 (209 SE2d 693) (1974), this court indicated four tests were applicable in determining whether a transaction fell within the definition of "security": the "Howey" test, SEC v. W. J. Howey Co., 328 U. S. 293 (66 SC 1100, 90 LE 1244) (1946); the "Joiner" test, SEC v. C. M. Joiner Leasing Corp., 320 U. S. 344 (63 SC 994, 87 LE 1129) (1943); the "Risk Capital" test, Silver Hills Country

Club v. Sobieski, 13 Cal. Rptr. 186 (361 P2d 906) (1961); and the "Managerial Efforts" test, SEC v. Glenn W. Turner Enterprises, Inc., 474 F2d 476 (1973). However, in determining whether a transaction such as that involved here constitutes a security, the courts have focused primarily upon one issue: do persons other than the investors provide the *essential managerial efforts* from which the investors expect profits? If the answer to that question is in the affirmative, then, for the protection of the investor, who is thereby seen to lack control over his investment, the courts have found the transaction to be a security. In SEC v. Howey, supra, pp. 298-299, the Supreme Court advised that "an investment contract for purposes of the Securities Act means a contract . . . whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . ." The Supreme Court also noted: "Such a definition [of investment contract] necessarily underlies this Court's decision in S.E.C v. Joiner Corp." Id., p. 299. Our Supreme Court has recognized the Howey definition and has warned: "However, we would not mean to infer that this definition should be adhered to with such strictness that a mere token participation in an enterprise by the person investing capital would prevent the contract from being classed as a security. In testing any transaction, 'form should be disregarded for substance and the emphasis should be on economic reality.' Tcherepnin v. Knight, 389 U. S. 332, 336 (88 SC 548, 19 LE2d 564)." *Ga. Market Centers, Inc. v. Fortson,* 225 Ga. 854, 858 (171 SE2d 620) (1969). In SEC v. Koscot Interplanetary, Inc., 497 F2d 473, 477 ( fn.7 ) (1974), the Fifth Circuit Court of Appeals ascribed the over-lap between the Howey test and the Risk Capital test "to the fact that the element of managerial control is implicit in the risk capital test. . ." Thus it appears that the basic policy behind all the tests set out in *Jaciewicki* is to protect the investor with the shield of the securities laws when the promoter or syndicator puts forth "the essential managerial efforts which affect the failure or success of the enterprise. . ." SEC v. Glenn W. Turner Enterprises, supra, p. 483.

Specifically with regard to sales of real estate held

under a tenancy in common arrangement, the Georgia Attorney General has rendered the following advice: "Unquestionably, a sale of an interest in real estate is not, of itself, a sale of a security. The courts have long recognized, however, that a transaction which purports only to be a sale of real estate can, when the economic realities of the transaction are examined, be determined to be a security. [Cits.] The rule which has developed is that any investment will be deemed an investment contract and a security if the investor's return is essentially dependent upon the efforts of the syndicator or an affiliate. [Cits.]" Op. Attorney General, 74-75, p. 146 (June 6, 1974).

Turning to the evidence at hand and evaluating it with an eye for the indicia of managerial control, we find that it cannot be held as a matter of law that the appellants performed the essential managerial functions which were to result in profit for the investors. The fact that the contract named Seitz as property manager is not determinative, as his duties were not of a profit-generating nature. Furthermore, a majority of the investors could replace him at any time. A sale of their property interests was the sole means by which the investors expected to realize profit. The co-tenancy contract granted the Larry E. Wilensky Co. the exclusive right, for eight years, to list the property for sale. However, the evidence is not conclusive that Larry E. Wilensky Co. or any of the appellants put forth the essential efforts expected to culminate in a sale. And, in fact, by virtue of the co-tenancy contract, even if the appellants, or one of them, did arrange a tentative sale of all or part of the property, the investors retained the ultimate right to disapprove and thereby prevent the sale. Furthermore, the contract provided that any investor, *on his own,* could procure an offer to sell his property at any time, and that he could accept that offer, so long as holders of 60% of the equity interest approved and so long as he allowed the other investors the opportunity to exercise their right of first refusal.

In *Fortier v. Ramsey,* 136 Ga. App. 203 (220 SE2d 753) (1975), this court found that, as a matter of law, the involved sales of land held in limited partnership

constituted sales of securities. Significantly, in that case, the general partner admitted, via deposition, that the investors (the limited partners) "looked *solely to him . . .* for the enhancement of their investments and the ultimate success of the ventures." (Emphasis supplied.) Id., p. 206. In *Kleiner v. Silver,* 137 Ga. App. 560 (224 SE2d 508) (1976), this court again found that the involved limited partnership interests in parcels of land were securities as a matter of law. The limited partnership agreement there provided that "the general partners [syndicators] shall be the managing partners . . . and be 'the *sole* representatives of the partnership in *all* transactions with third parties,' " that the "general managers shall have the *sole* right to convey partnership property" (emphasis supplied) and that the limited partners (the investors) shall have *no* right to control partnership business. Id. Finally, in *Allied Leasing Corp. v. Murphy,* 141 Ga. App. 424 (233 SE2d 499) (1977), this court held that, as a matter of law, "[a]n agreement, whereby a forty-acre tract of California real estate was sold with the *guarantee* that the *sellers* would resell the realty in one year for twice the plaintiff's purchase price, was a 'security.' " (Emphasis supplied.) The above cases are distinguishable, however, for in this case the investors retained the power to procure their own "bona fide offers" and the power to make the ultimate decision: to sell or not to sell. Since the investors did have such control over that essential decision from which they expected profits to flow, the trial court erred in holding that, as a matter of law, the appellants' scheme involved the sale of unregistered securities.

2. From the evidence presented, neither can it be said that, in economic reality, the appellants did *not* perform the essential managerial functions from which profits were to be expected. Therefore, as it cannot be held that, as a matter of law, the sales of land did *not* involve the sales of securities, the trial court properly denied appellants' motion for summary judgment.

3. Appellants contend that, merely because Osborne was an associate in the law firm which provided legal services to appellants, he would be estopped to assert that he had purchased unregistered securities. We disagree.

"There is no basis for waiver or estoppel in a situation of this sort except where there has been gross misconduct on the part of the plaintiff or fraud such as would bar him from recovery. . . The purpose of the blue sky laws is to allow the plaintiff to rescind where the securities offered were not issued in compliance with the law in question." *Allen v. Smith & Medford, Inc.,* 129 Ga. App. 538, 543 (199 SE2d 876) (1973).

4. The trial court granted Levick's motion for summary judgment because he "was not an executive officer in control of the corporation within the purview of Code § 97-114 (b) and therefore not subject to liability under plaintiff's cause of action." This was error. Initially, we note that the 1973 land sale would be governed by the Georgia Securities Act of 1957, which provided: "Every sale or contract for sale in violation of any of the provisions of [the Georgia Securities Act of 1957] . . . shall be voidable at the election of the purchaser. The person making such sale or contract for sale, and every director, officer, salesman or *agent* of or for such seller who shall have participated or aided *in any way* in making such sale, shall be jointly and severally liable to such purchaser . . ." (Emphasis supplied.) Ga. L. 1957, pp. 134, 161. The 1974 land sale would be governed by the Georgia Securities Act of 1973, which provides in pertinent part: "Every person who directly or indirectly controls a person liable under subsection (a) above, every general partner, executive officer or director of such person liable under sub-section (a) above, every person occupying a similar status or performing similar functions, and every dealer, limited dealer, salesman, limited salesman, or *agent who participates in any material way in the sale* are liable jointly and severally with and to the same extent as the person liable under subsection (a) above . . ." (Emphasis supplied.) Ga. L. 1973, pp. 1202, 1251. The trial court erred in finding that Levick was not subject to liability as he "was not an executive officer in control of the corporation" and in granting his motion for summary judgment on the basis of that finding. Considering Levick's participation as the attorney closing the sales and as the signatory officer and assistant secretary for D. K. Properties, in light of the

standards set out in the 1957 and 1973 Securities Acts, it cannot be held as a matter of law that Levick is not subject to liability.

*Judgment reversed in part and affirmed in part. Bell, C. J., and McMurray, J., concur.*

ARGUED MAY 3, 1977 — DECIDED NOVEMBER 14, 1977.

*Cofer, Beauchamp & Hawes, Peyton S. Hawes, Jr., Robert S. Jones,* for appellants.
*Carr, Wadsworth, Abney & Tabb, Benjamin C. Abney, James E. Flynn, Jr.,* for appellee.