S98A0810. WOMACK v. STATE OF GEORGIA et al.
(507 SE2d 425)

THOMPSON, Justice.

Plaintiff, the Commissioner of Securities of the State of Georgia, brought suit against The GFI Financial, Inc. ("GFI") and Virgil Womack, GFI's president, seeking an injunction to prohibit defendants from selling unregistered securities of GFI. In addition, plaintiff sought the appointment of a receiver for the assets and affairs of GFI. It was alleged that GFI and Womack were engaged in selling "promissory notes"; that the notes constituted unregistered securities and were sold pursuant to a scheme to defraud purchasers of the notes; and that no secondary market existed for the sale of the notes.

By agreement of the parties, the court entered a temporary

restraining order prohibiting defendants from selling unregistered securities of GFI; it also appointed a temporary receiver of GFI. Thereafter, an interlocutory injunction was entered to the same effect.

Defendants answered the complaint and counterclaimed, asserting, inter alia, that the State violated their constitutional right to be free from illegal searches and seizures, improperly gained control of GFI through receivership, and committed acts of waste. In so doing, defendants challenged the constitutionality of OCGA § 10-5-21, which confers immunity on the Commissioner of Securities, asserting that that statute denies them "equal access to the courts through counterclaim."

Following a trial on the merits, the court determined that GFI operated for approximately five months; that during that time it sold 90 to 100 promissory notes for a total of approximately $6,000,000; that, as of September 30, 1997, GFI had assets of $146,715.62, and liabilities totaling $6,395,697.05; and that, in a brochure entitled "Worlds of Opportunity," GFI claimed assets of $1.2 billion. The court also determined that GFI had no ability to generate income other than through the sale of the notes; that the average commission paid to GFI agents and brokers was 49.4 percent of the face value of the notes; that GFI claimed its investment activities would yield returns of approximately 10 percent to 28 percent to purchasers of the notes; and that, in order to return principal and interest to purchasers timely, GFI would have to reap a return of 282 percent on its investments. Finally, the court found that most of the notes which GFI sold matured in nine months;[1] that no secondary market exists for the sale of the notes; and that the notes were not registered as securities.[2] Based on its findings, the court concluded that GFI sold unregistered securities pursuant to "a device, scheme or artifice to defraud." It also determined that GFI was insolvent and that "expedient liquidation [of GFI] would be in the best interest of all parties." To that end, the court appointed a permanent receiver and ordered him to file a plan of liquidation. It also permanently enjoined defendants from selling promissory notes of GFI. Womack appealed.

1. There is no doubt that GFI's promissory notes meet the definition of "securities" under the Georgia Securities Act of 1973, OCGA

---

[1] Some of the notes matured in more than nine months. These notes were renewed automatically for an additional term unless the purchasers communicated a desire to surrender them at maturity.

[2] It was claimed that GFI purchased "additional security" for the notes from Keyes International Insurance Company ("Keyes"); and that the "additional security" took the form of a "surety bond." However, the financial credibility of Keyes was not proven at trial. Keyes was not rated by any insurance rating firm in the United States; and it was not authorized to do business in Georgia or anywhere else in the United States.

§ 10-5-2 (a) (26), and the test set forth in *Dunwoody Country Club v. Fortson*, 243 Ga. 236 (253 SE2d 700) (1979), for determining whether an investment is a security. Womack acknowledges as much. After all, the notes evidence an investment in a common venture, and are based on a reasonable expectation of profits derived from the entrepreneurial or managerial efforts of others. *Dunwoody*, supra at 239.

Womack contends, however, that the notes were exempt from registration under OCGA § 10-5-8 (9). That Code section exempts

> Promissory notes maturing in not more than nine months from date of issuance, provided that said securities are not offered for sale by means of advertisements publicly disseminated in the news media or through the mails.

On the surface, it would appear that the bulk of GFI's promissory notes were exempt from registration because they did not mature more than nine months from the date of issuance. However, exemptions from registration are to be strictly construed in favor of investors, and one claiming an exemption has the burden of proving its applicability. *Dunwoody*, supra at 242; *Blau v. Redmond*, 143 Ga. App. 897, 902 (240 SE2d 273) (1977).[3] Womack did not carry that burden. The mere fact that a note matures in "less than nine months is not dispositive of the question of exemption from registration. It is the character of the evidence of indebtedness, note, or security, not its maturity date, which determines coverage under the Securities Act." *Blau*, supra. See also *Dunwoody Country Club*, supra at 238 (only notes which represent investments, not those which represent commercial transactions, are securities). Here, GFI's notes had all of the characteristics of a security: They represented investments in a common scheme (in which the investor looked to the efforts of others for a return on his investment), not commercial transactions. *Dunwoody Country Club v. Fortson*, supra.

2. Womack asserts the court erred in denying a motion for partial summary judgment on the issue of fraud. However, once a case has been tried, an appellate court will not consider the denial of a summary judgment motion. *Drillers Service v. Moody*, 242 Ga. 123, 124 (1) (249 SE2d 607) (1978).

3. When Womack sought the deposition of Duane Fry, one of

---

[3] *Blau* was criticized in *Dunwoody Country Club v. Fortson*, supra, for taking a literal approach in determining whether an instrument was a security. However, the *Dunwoody* court did not fault *Blau* for the way in which it went about determining whether an instrument fit a statutory exemption. Accordingly, we can look to *Blau* for guidance in making a determination of exemption vel non.

plaintiff's criminal investigators, and John F. Kennedy, the receiver, plaintiff moved for a protective order on the ground that a criminal investigation of defendants' activities was in progress. The court granted plaintiff's motion for a protective order temporarily, i.e., until "further hearing," and it invited defendants to submit a legal basis for taking the depositions. Defendants took no action to bring this matter to the attention of the court for a favorable disposition in a timely fashion.

Relying upon *Christopher v. State of Ga.*, 185 Ga. App. 532 (364 SE2d 905) (1988), Womack asserts the court erred in entering an order staying discovery pending disposition of a related criminal matter. *Christopher* is inapposite. In that case, the stay order was of indefinite duration; conversely the order in this case was of very limited duration. Moreover, Womack was given an opportunity to pursue the depositions before trial, and he did not do so.

Even if it could be said that the court erred in granting the protective order, we would find no error requiring reversal because Womack has not even attempted to show how he was harmed. *Brown v. City of Atlanta*, 66 Ga. 71, 76 (1880). Compare *Jones v. Scarborough*, 194 Ga. App. 468, 470 (390 SE2d 674) (1990), with *Smith v. Davis*, 121 Ga. App. 704, 705 (2) (175 SE2d 28) (1970).

4. The record does not support Womack's assertion that the receiver assumed the role of a "special prosecutor" and that the court failed to restrain him. Womack has failed to rebut the presumption that the court and receiver have faithfully discharged their duties. See *Northeast Factor &c. Co. v. Mortgage Investments*, 107 Ga. App. 705, 710 (131 SE2d 221) (1963).

5. Finally, Womack asserts that OCGA § 10-5-21,[4] which confers immunity on the Commissioner of Securities, is unconstitutional insofar as it does not permit the filing of a counterclaim against the Commissioner. We disagree. Immunity from suit is a legislative prerogative. *Sikes v. Candler County*, 247 Ga. 115, 117 (2) (274 SE2d 464) (1981). It follows that the legislature can prescribe the terms and conditions upon which the State consents to be sued; and that OCGA § 10-5-21 cannot be deemed unconstitutional simply because it prevents Womack from filing a counterclaim. Id. See also OCGA § 9-11-13 (d) (counterclaim cannot be used to enlarge beyond the limits fixed by law the right to assert a claim against the State or an officer thereof).

*Judgment affirmed. All the Justices concur.*

---

[4] This Code section reads, in pertinent part: "For any action taken or any proceeding had under this chapter or under color of law, the commissioner shall be immune from liability and suit to the same extent that any judge of any court of general jurisdiction in this state would be immune."

Decided September 14, 1998 —
Reconsideration denied October 26, 1998.

C. Nelson Jarnagin, for appellant.

Thurbert E. Baker, Attorney General, John C. Jones, Senior Assistant Attorney General, Ralph W. Ellis, John B. Ballard, Shereen M. Walls, W. Wright Banks, Jr., Assistant Attorneys General, Kirbo & McCalley, Thomas L. Kirbo III, Hall, Bloch, Garland & Meyer, John F. Kennedy, Boyce, Ekonomou & Atkinson, Andrew J. Ekonomou, for appellees.