PER CURIAM:
Charles E. Edwards appeals from the district court’s grant of a preliminary injunction in favor of the Securities and Exchange Commission (SEC). The SEC alleged Edwards’ company, ETS Payphones, Inc. (ETS), sold securities in violation of the registration and anti-fraud provisions of the federal securities laws. See 15 U.S.C. §§ 77e(a), 77e(c), 77q(a), 78j(b); 17 C.F.R. § 240.10b-5. The SEC alleged these securities involved “investment contracts" whereby investors purchased a pay telephone from Edwards only to lease it back to ETS for management in exchange for a fixed monthly fee. The court determined it had jurisdiction over the SEC’s action and preliminarily enjoined Edwards from future violations of the securities laws. It also froze Edwards’ assets in anticipation of possible future disgorgement. On appeal, Edwards urges that the transactions did not involve securities and that the SEC lacks subject matter jurisdiction. We agree.

Facts

Edwards is the principal actor in several business entities relevant to this appeal. He is the founder and majority stockholder of ETS. He is a member of its board of directors and served as its chief executive officer for most of the time period relevant to this appeal. ETS was incorporated to provide management services, i.e. placement, advertising, maintenance, coin collecting, and accounting, for owners of pay telephones.
Edwards also founded Payphone Systems Acquisitions, Inc. (PSA). PSA was a wholly owned subsidiary of ETS. PSA purchased telephone equipment and locations, which it sold at wholesale to distributors. Edwards also is the principal owner of Twinleaf, Inc., a consulting company Edwards created to provide support services to ETS.
The SEC asserts Edwards used these entities collectively to engage in a single, larger venture involving the sale of securities, specifically investment contracts. An investor would purchase a pay telephone indirectly from PSA, subject to a provision whereby the purchaser had fifteen days to cancel the transaction. Then the purchaser would lease the phone “back” to ETS for management in exchange for a fixed monthly fee. If at any time the purchaser was not satisfied with the arrangement, it could require ETS to purchase the phone for a prearranged price. Alternatively, it could cancel the lease and repossess its telephone without penalty. The SEC characterizes these transactions collectively as a “unit” sufficient to constitute a security under federal law. There is no dispute that Edwards did not register these transactions with the SEC.[1]
*1283 The immediate dispute arose when, in September 2000, ETS and PSA filed a voluntary petition for bankruptcy and reorganization. As a result, ETS stopped making lease payments to the telephone owners and ceased honoring the buyback guarantees. The SEC brought this action asserting Edwards engaged in widespread fraud. Specifically, the SEC alleges Edwards’ business venture was actually a “massive Ponzi scheme.” It argues Edwards did not operate a legitimate business but rather fleeced his investors by misrepresenting his company as profitable when it only survived because he constantly recruited new purchasers and used their capital to satisfy ETS’s obligations. The SEC asserts Edwards sustained this fraud for over five years, raising more than $300 million from over 10,000 investors, with the full knowledge that eventually the stream of new investors would dry up and only he would profit while his investors lost everything.
To prevent this perceived injustice, the SEC’s suit prayed for disgorgement of any profits Edwards may have made as a result of his business dealings. The merits of this suit, however, are not before the court. We only review the district court’s grant of a preliminary injunction and freeze of Edwards’ assets. Edwards asserts various grounds of error, including an absence of subject matter jurisdiction and abuse of discretion in granting the injunction and asset freeze. We hold the district court lacked subject matter jurisdiction to entertain this action; under the circumstances, we need not consider the other issues.

Jurisdiction

Edwards challenges the district court’s subject matter jurisdiction to grant relief to the SEC, arguing the sale of pay telephones does not involve securities under federal law. Specifically, Edwards argues these transactions did not involve investment contracts. In order to defeat a jurisdictional attack on a preliminary injunction, the SEC must establish “a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.” SEC v. Unique Fin. Concepts, Inc., 196 F.3d 1195, 1198 (11th Cir.1999) (quoting Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 902 (11th Cir.1984)). The Supreme Court has established a three part test for determining whether a particular financial interest constitutes an investment contract and, thus, a security. In SEC v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), it held that an investment contract is “a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.... ” Thus, the Supreme Court has characterized a transaction as an investment contract if it involves (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits to be derived solely from the efforts of others. We agree with the district court that an investment of money is apparent. We address the remaining requirements in turn.
A Common Enterprise
As Edwards points out, there is disagreement among the circuits as to the *1284 requirements of the second prong of the Howey test. Most circuits that have considered the issue find it satisfied where a movant shows “horizontal commonality,” that is the “pooling” of investors’ funds as a result of which the individual investors share all the risks and benefits of the business enterprise. See, e.g., SEC v. Infinity Group Co., 212 F.3d 180, 188 (3d Cir.2000).[2]
Edwards’ asserts the test for a common enterprise in this circuit is not settled and urges the court to adopt horizontal commonality. Notwithstanding Edwards’ argument, we believe we are bound by precedent to apply a different test for commonality, “broad vertical commonality.” See SEC v. Unique Financial Concepts, Inc., 196 F.3d 1195, 1199-1200 (11th Cir.1999); Eberhardt v. Waters, 901 F.2d 1578, 1580-81 (11th Cir.1990); SEC v. Koscot Interplanetary, Inc., 497 F.2d 473, 478-79 (5th Cir.1974). Broad vertical commonality, the easiest to satisfy of the alternative tests, only requires a mov-ant to show that the investors are dependent upon the expertise or efforts of the investment promoter for their returns. We need not explore the applicability of this prong to the present case, however, in light of our holding that the last prong, “expectation of profits,” clearly is unsatisfied.

B. Expectation of Profits Solely from the Efforts of Others

The SEC cannot show a reasonable probability of success on the merits because it cannot show that investors who contracted with ETS expected profits to be derived solely through the efforts of others.
The SEC argues “profits” must be understood in a general sense. It notes that, in United Housing Found. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Court stated that an investor is “ ‘attracted solely by the prospects of a return’ on his investment.” Id. at 852, 95 S.Ct. 2051 (quoting Howey, 328 U.S. at 300, 66 S.Ct. 1100). The definition of profits, the SEC asserts, must be understood in terms of the nature of an investment. Here, ETS’s investors purchased their telephones for the purpose of earning a return on the purchase price. Thus, the SEC urges, this should be enough to justify a finding of expectation of profits.
Although the simplicity of the SEC’s proposed approach is naturally appealing, we must disagree. In Forman, the Court made clear that the word “profits” has a limited meaning under federal securities law. Profits, in that context, require either a participation in earnings by the investor or capital appreciation. See id. at 852, 95 S.Ct. 2051 (“By profits, the Court has meant either capital appreciation resulting from the development of the initial investment ... or a participation in earnings resulting from the use of investors’ funds.... ”). In this case, there is no dispute that capital appreciation is not at issue. Moreover, the fixed lease payments paid to owners of the telephones cannot be considered participation in earnings; owners were not looking for any profit in the sense that they would receive earnings from the company. The owners certainly had no intention to share in the concomitant risk that their participation in the *1285 company’s earnings would occasionally require them to share company losses. Of course, the funds generated by the payphones helped ETS meet its obligations. But this does not justify characterization as participation in earnings. Because the investors received a fixed monthly sum, the actual earnings of their telephone, or ETS, were irrelevant. ETS alone shouldered the risk of its placement of the telephones and ETS alone depended upon the earnings of its business. Thus, only ETS could reap profits as that term is understood under the federal securities law.
Even in the event the investors’ return could be considered profits, the final How-ey prong cannot be satisfied because the investors did not expect profits to be derived solely from the efforts of others. The parties dispute the level of control over the telephones the investors retained under the leaseback agreements. See Albanese v. Florida Nat’l Bank of Orlando, 823 F.2d 408, 410 (11th Cir.1987) (“If the investor retains the ability to control the profitability of his investment, the agreement is no security.”). The SEC asserts the investors desired their telephones to be passive investments; Edwards urges the investors’ right to cancel the lease and repossess their telephones, or not contract with ETS at all for that matter, constitutes sufficient control under the Albanese standard. In our opinion, however, the determining factor is the fact that the investors were entitled to their lease payments under their contracts with ETS. Because their returns were contractually guaranteed, those returns were not derived from the efforts of Edwards or anyone else at ETS; rather, they were derived as the benefit of the investors’ bargain under the contract.
Because the SEC cannot satisfy the requirements of the Howey test to prove the existence of a security, we hold the district court did not have subject matter jurisdiction under the federal securities laws. The decision of the district court issuing a preliminary injunction and asset freeze is REVERSED with directions to dismiss the SEC’s complaint for lack of subject matter jurisdiction.

. We note that Edwards conferred with SEC staff in Atlanta in 1995 concerning ETS’s pay *1283 phone program. Edwards and his lawyers provided documents and records to the SEC and met with an SEC attorney. At that time, the record shows the SEC attorney was told the marketing and leasing aspects of ETS's business would be separated to avoid any claim that the payphone business involved a security. The SEC took no action and did not contact Edwards until the year 2000 when ETS filed for bankruptcy and reorganization.

. See also SEC v. Banner Fund Int’l, 211 F.3d 602, 614-15 (D.C.Cir.2000); SEC v. Life Partners, Inc., 87 F.3d 536, 543-45 (D.C.Cir.1996); Teague v. Bakker, 35 F.3d 978, 986 n. 8 (4th Cir.1994); Wals v. Fox Hills Dev. Corp., 24 F.3d 1016, 1018-19 (7th Cir.1994); Revak v. SEC Realty, 18 F.3d 81, 87-89 (2d Cir.1994); Newmyer v. Philatelic Leasing, Ltd., 888 F.2d 385, 391-93 (6th Cir.1989).