574 S.E.2d 830 (2002)
258 Ga. App. 735
UNITED AMERICAN INSURANCE COMPANY
v.
INSURANCE DEPARTMENT OF GEORGIA et al.
No. A02A1006.
Court of Appeals of Georgia.
November 19, 2002.
Reconsideration Denied December 6, 2002.
*831 King & Spalding, Byron Attridge, Richard L. Shackelford, Robert M. Keenan III, Atlanta, for appellant.
Thurbert E. Baker, Atty. Gen., Robert S. Bomar, Deputy Atty. Gen., Harold D. Melton, Senior Asst. Atty. Gen., Sidney R. Barrett, Jr., Asst. Atty. Gen., for appellees.
SMITH, Presiding Judge.
We granted United American Insurance Company's application to appeal after the superior court affirmed the decision of the Georgia Insurance Commissioner to disapprove United American's 2000 rate filings for its Medicare Supplement policies. In four enumerations of error, United American contends the Commissioner's order was erroneous and the superior court erred in affirming it. We do not agree, and we affirm.
The type of insurance involved in this appeal is known in the industry as Medsup. The policies insure against medical costs not covered by Medicare. Georgia began regulating such policies in 1989. Ga. L. 1989, p. 1276. In 1990 the federal government became involved in their regulation. Under the Omnibus Budget Reconciliation Act of 1990, the terms of all new Medsup policies were standardized. Existing policies could be renewed, however, and became known as "prestandardized" policies. Federal regulations were promulgated to set minimum standards for states in their regulation of Medsup policies. The National Association of Insurance Commissioners (NAIC) then developed model state statutes and regulations for Medsup insurance rates and forms. Georgia's original Medsup statutes were repealed in 1992, and they were replaced with the model statutes. OCGA §§ 33-43-1 through 33-43-9. The Georgia Department of Insurance also adopted the new model Medsup regulations drafted by NAIC. Ga. Comp. R. & Regs. r. 120-2-8 et seq.
Rates for Medsup policies are based upon a loss ratio, the ratio of premium dollars collected to claim dollars paid. Regulations establish a minimum loss ratio an insurer must meet before it is entitled to impose higher premiums. For "prestandardized" policies, issued before July 29,1992, the minimum *832 acceptable loss ratio is 60 percent. Ga. Comp. R. & Regs. r. 120-2-8-.14(1)(a)2. For "standardized" policies, it is 65 percent. Ga. Comp. R. & Regs. r. 120-2-8-.14(1)(d)1. The loss ratios must be recalculated every year, using historical and projected data, based partly on how the policies have performed since their inception and how they will perform in the future. R. 120-2-8.14(3). These calculations are performed by actuaries, and the rates are governed by OCGA § 33-43-4, which provides:
Medicare supplement policies shall return to policyholders benefits which are reasonable in relation to the premium charged. The Commissioner shall issue reasonable regulations to establish minimum standards for loss ratios of medicare supplement policies on the basis of incurred claims experience ... and earned premiums in accordance with accepted actuarial principles and practices.

(Emphasis supplied.) These accepted principles and practices are set forth in Actuarial Standard of Practice ("ASOP") No. 8, which was adopted by the Actuarial Standards Board to guide actuaries in calculating health insurance rate filings. The standard sets out factors and assumptions that must be considered when making actuarial calculations for such filings. One such assumption is that an insurance company will invest premiums to generate income. This is called the "time value of money," and is known as the "interest assumption."
The record shows that United American was granted a rate increase in 1999. In 2000, it sought another rate increase of five percent for its prestandardized policies and 6.4 to 14 percent for its standardized policies. The Consumers' Insurance Advocate opposed these increases on the ground that they were not justified by the company's losses. In accordance with OCGA § 33-2-11, the Commissioner hired an actuarial consultant, Dr. Joseph Tan, to examine the rate filings. Dr. Tan found that an interest assumption had not been included in the income calculations for the company. In his career, during which he had reviewed "hundreds" of Medsup rate filings, Dr. Tan had seen only one or two such filings that did not include an interest assumption. He notified the Department, which then contacted an actuary with NAIC, who confirmed that interest assumptions must be included in Medsup rate filings. After checking every pending Medsup rate filing, the Department confirmed that all 120-150 filings included an interest assumption, except for the filings of United American and a related company, Globe Life & Accident Insurance Company.
On June 18, 2000, the Department disapproved petitioner's rate filings, noting that the filings did not comply with the provisions of OCGA § 33-43-4 and Ga. Comp. R. & Regs. r. 120-2-8-.14, in that they failed to follow accepted actuarial principles and practices because the loss ratio projections did not include a reasonable assumption for interest. Another reason for disapproval was that additional information requested by the Department's contract examiner had not been provided. United American appealed this decision to the Superior Court of Fulton County. The superior court announced an oral ruling from the bench, affirming the decision of the Commissioner. Reconsideration was denied, and final judgment later was entered affirming the Commissioner's ruling.
1. We note initially, as appellees point out, that United American does not address on appeal the portion of the Commissioner's order disapproving the rate filings because of failure to cooperate by providing the additional information requested by the Department's contract examiner. Appellees argue that the Commissioner's order could be affirmed on this basis alone. We address United American's enumerations of error, however, because the Commissioner's ruling appears to have been based upon the determinations enumerated, as well as United American's failure to cooperate, and because the enumerations raise important issues of first impression.
2. In its ruling, the Commissioner ordered United American to recalculate loss ratios from the inception of the policies. United American contends that this portion of the order violates constitutional and statutory prohibitions on retroactive laws. We do not agree.
*833 The seminal Georgia case on retroactive laws is Ross v. Lettice, 134 Ga. 866, 868, 68 S.E. 734 (1910). In that case, the Supreme Court held:
A statute is retroactive in its legal sense which creates a new obligation on transactions or considerations already past, or destroys or impairs vested rights. A statute does not operate retrospectively because it relates to antecedent facts, but if it is intended to affect transactions which occurred or rights which accrued before it became operative as such, and which ascribe to them essentially different effects, in view of the law at the time of their occurrence, it is retroactive in character.
(Citation omitted.) Eig v. Savage, 177 Ga. App. 514, 515, 339 S.E.2d 752 (1986). It is well established that this applies to agency regulations and actions as well. See, e.g., Craig v. City of Lilburn, 226 Ga. 679-680, 177 S.E.2d 75 (1970). United American argues that the Commissioner's ruling is retroactive because for 20 years its rate filings were approved notwithstanding that their calculations did not include an interest assumption. According to United American, the interest assumption requirement therefore must be a new one, and the Commissioner seeks to apply it retroactively by deeming the previously charged rates "overcharges" and ordering United American to impute interest for the last 17 years into its present loss ratio calculation. United American claims that such calculations would cut United American's rates in half or more in order to make up for these past "overcharges." Relying heavily upon Ga. Public Svc. Comm. v. Atlanta Gas Light Co., 205 Ga. 863, 55 S.E.2d 618 (1949), United American argues that using a rule that did not exist when prior rate filings were approved and characterizing the past approved rates as "overcharges" destroy its vested right to have collected premiums in accordance with the rates approved, making the requirement an impermissible retroactive law.
We do not agree, for several reasons. First, United American's reliance upon Atlanta Gas Light is misplaced. Calculation of utility rates is fundamentally different from calculation of Medsup insurance rates. Utility rates are intended to achieve a "fair return on capital," while Medsup rates are intended to achieve a specified profit margin over the life of the policies. Of necessity, this must be done by reanalyzing historical data and adjusting rates on an annual basis, so as to achieve the target at some point in the future. Moreover, public utility ratemaking is a legislative function. Id. at 883, 55 S.E.2d 618. The Public Service Commission sets and imposes rates on the various utilities. In contrast, the Department of Insurance reviews the rate applications submitted by insurers to determine whether the proposed rates have been calculated in accordance with the statutory formula; its role is purely administrative, making cases involving public utility ratemaking inapplicable to situations involving Medsup rate filing approval.
Second, and perhaps more importantly, United American's argument creates only an illusion of retroactivity. Although United American was ordered to recalculate its rates using data from the inception of the policy period to the present, that is exactly what the statute and the regulation require every Medsup carrier to do every year in its annual filings. The Commissioner's order changes only how future rates are to be calculated; it does not change any rate charged in the past. Although United American argues that it is "unfair" to it to begin imposing an interest assumption requirement because this will reduce premiums drastically, the statute and regulations require Medsup policies to return to the policyholders benefits that are reasonable in relation to the premiums charged. Since the entire life of a Medsup policy must be analyzed in making this determination, we agree with the Commissioner that requiring United American to recalculate loss ratios including the value of money from the policy's inception is the only way to insure "fairness" to the policyholders and carry out the mandate of OCGA § 33-43-4. The Commissioner's order simply requires United American to use the same formula all other insurers have been using.
No evidence was presented showing that the requirement of including an interest assumption in Medsup rate calculations is a new one. Certainly, United American possessed *834 no vested right in having its interest income from prior years treated the same in all future rate calculations. The fact that previous rate filings were approved even though they did not include an interest assumption does not prove that the requirement is new. Although the Department overlooked the fact that United American did not use an interest assumption and approved its rate filings nonetheless, that does not signify that using an interest assumption was never required. Moreover, existing authority in the form of the ASOP, the statute, and the regulations had not theretofore been interpreted by the Commissioner because the issue had not been raised. When the existing authority, the statute and regulations, were interpreted, no new law was created. The interpretation merely stated what the law had always been. The question of retroactivity is raised only when a new principle of law is established, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not "clearly foreshadowed." Brown v. Earp, 261 Ga. 522, 524, 407 S.E.2d 737 (1991). No issue of retroactivity exists in this case because no new law was established by the Commissioner's ruling, which was "clearly foreshadowed" by the industry standards, particularly ASOP No. 8, which the parties all agree applies to the calculations in issue, and the clear language of the statute.
3. United American contends the Commissioner's ruling that an interest assumption must now be included violates Medsup regulations. We do not agree.
Ga. Comp. R. & Regs. r. 120-2-8.14(1)(d)1 provides that "[f]or policies issued prior to July 29, 1992, expected claims in relations to premiums shall meet ... [t]he originally filed anticipated loss ratio when combined with the actual experience since inception."
United American argues that because the "originally filed anticipated loss ratio" did not include interest, the Commissioner's order violates the Department's own regulation, as it will be impossible for United American to meet this requirement if it is forced to use the interest assumption. It argues that if an interest assumption is used, it results in a number that differs necessarily from the "sum total" of the claims and premiums in question, because it increases the historical sum totals of claims and premiums and decreases future expected sum totals. But the statute provides that calculations are to be done "in accordance with accepted actuarial principles and practices," which require an interest assumption.
United American also argues that the interest assumption requirement conflicts with the regulation's use of the term "aggregate," with the refund requirement, and with the history of the regulation. This argument is specious. The regulation requires loss ratios to be based upon the ratio of "aggregate benefits" to "the aggregate amount of premiums." Ga. Comp. R. & Regs. r. 120-2-8-.14(1)(a)2. The record shows that the word "aggregate" as used in actuarial practice has no relevance to using an interest assumption. Further, although United American also argues that it is inconsistent to require an interest assumption in the calculations when it is clearly not required in the loss ratio calculations for refunds,[1] interest assumptions are not used in refund calculations because they are retrospective, short-term calculations, while loss ratio calculations concern long periods of time, during which accrued interest becomes significant.
The Commissioner determined that all insurance companies writing Medsup policies in Georgia must follow the same laws and regulations, and every such insurer except twoUnited American and Globe Life used an interest assumption in its rate filings. When statutes and regulations are interpreted by the Commissioner empowered to enforce them, that interpretation is entitled to deference, Commr. of Ins. v. Stryker, 218 Ga.App. 716, 718(5), 463 S.E.2d 163 (1995), unless that interpretation is contrary to the plain language of the statute. Sawnee Elec. Membership Corp. v. Ga. Public Svc. *835 Comm., 273 Ga. 702, 706, 544 S.E.2d 158 (2001).
4. United American maintains that Georgia's Administrative Procedure Act (APA), OCGA §§ 50-13-1 through 50-13-23, prohibits administrative agencies without exception from implementing a "rule" promulgated without following rulemaking requirements, including public notice and an opportunity for comment. OCGA §§ 50-13-3; 50-13-4. This argument has no merit.
First, as discussed in Division 2, supra, the Department was not promulgating a new rule. Second, the Commissioner's decision was a statement of policy or an interpretation made in the context of a contested case, which is an exception to the APA requirements. OCGA § 50-13-2(6)(D). It is also exempt from the APA rulemaking procedure under OCGA § 50-13-2(6)(J), as an "approval or prescription for the future of rates."
5. In its final enumeration of error, United American contends that the Commissioner also applied other new "rules" to its 2000 rate filings, disapproving procedures it had approved in the past. It offers no argument for this enumeration other than that for the same reasons, these new "rules" were unlawfully applied retroactively and in violation of the APA. It follows, therefore, that for the same reasons discussed above, we find no merit in this enumeration.
Judgment affirmed.
ELDRIDGE and ELLINGTON, JJ., concur.
NOTES
[1] The regulation on refunds requires insurers to issue refunds to policyholders when the actual historical loss ratio exceeds a benchmark loss ratio. Ga. Comp. R. & Regs. r. 120-2-8.14(2)(b).